**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ORHAN YAVUZ,

        Plaintiff-Appellant,

v.

61 MM, LTD., an Oklahoma limited
partnership, 61 MM, CORP., an
Oklahoma corporation, ADI KAMEL
MOHAMED, also known as Kamal
Adi, and FPM S.A., a corporation,
doing business as FPM Finastate
Projects Management S.A., a Swiss
corporation,

        Defendants-Appellees,

   and

SIGOFINE S.A., a Panamanian
corporation, and EUROEAST CORP.,
also known as Euro-Eastcorp, a
Panamanian corporation,

        Defendants.

No. 08-5161

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CV-03-586-GFK-SAJ)**

---

Robert P. Skeith (Kenneth M. Smith with him on the briefs), Riggs, Abney, Neal,
Turpen, Orbison & Lewis, Tulsa, Oklahoma, for Appellant.

Timothy A. Carney (James M. Sturdivant with him on the brief), GableGotwals,
Tulsa, Oklahoma for Appellees Adi and FPM, S.A., and Grant E. Cheadle,

Cheadle & Associates, Inc., Tulsa, Oklahoma for Appellees 61 MM Corp. and 61 MM Ltd.

Before **MURPHY**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

This financial fraud case involves parties, witnesses, and real property located in, among other places, Switzerland, Turkey, Panama, and Tulsa, Oklahoma. Plaintiff Orhan Yavuz, a Turkish citizen, alleges the various Swiss, American, and Panamanian defendants defrauded him of money used to purchase property in Tulsa, Oklahoma. Relying on a Swiss choice-of-forum clause in the master agreement among the principal parties, the defendants contend the case should be litigated in Switzerland.

The district court agreed and dismissed the suit on *forum non conveniens* grounds, concluding Switzerland was an adequate alternative forum, Swiss law applied to this dispute, and that the balancing of public and private interest factors weighed in favor of Swiss jurisdiction. Yavuz now brings this appeal challenging the district court's *forum non conveniens* determination.

Having jurisdiction under 28 U.S.C. § 1291, we agree that Switzerland is the more convenient forum for this dispute. We therefore AFFIRM the district court's order dismissing without prejudice Yavuz's lawsuit.

# I. Background

A detailed background concerning the parties and their dispute can be found in our previous opinion, *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418 (10th Cir. 2006) (*Yavuz I*). For purposes of this appeal, we briefly summarize the relevant facts and procedural history.

In the early 1980s, Yavuz, a Turkish citizen, became involved in various business dealings with Kamal Adi, a dual citizen of Switzerland and Syria. In particular, Yavuz appears to have deposited various commodities and currencies with Adi for investment purposes, including the acquisition of an ownership share in real estate located in Tulsa, Oklahoma. Title to this Tulsa property is currently held by 61 MM, Ltd., whose general partner is 61 MM Corp. (collectively 61 MM Defendants). Yavuz alleges Adi either directly controls the 61 MM Defendants, or that they are alter egos of Adi's other corporate ventures. According to Yavuz, these other corporate ventures controlled by Adi also include defendants FPM S.A. (FPM); Sigofine S.A. (Sigofine); and Euroeast Corp. (Euroeast).[1]

Sometime later, Yavuz discovered Adi and his various corporate entities had misappropriated much of his initial investment. Nevertheless, in 1989 the

---

[1] Yavuz alleges the 61 MM Defendants are entities Adi structured to deprive Yavuz of his investment in the Tulsa property. FPM is a Swiss corporation whose principal place of business is Fribourg, Switzerland. Sigofine and Euroeast are Panamanian corporations that apparently have offices in Switzerland. Neither Sigofine nor Euroeast have ever been served. Collectively, Adi and these corporate parties will be referred to as "defendants."

parties reached a settlement converting Yavuz's original investment into a loan to FPM and granting Yavuz a twenty percent share in a venture created to purchase and control real estate in Tulsa, Oklahoma. This settlement was memorialized in a Fiduciary Agreement between Yavuz and FPM.[2]

### *Yavuz's Lawsuit*

Despite this new agreement, the relationship between Yavuz and the defendants apparently did not improve. In July 2003, almost fourteen years after the Fiduciary Agreement had been negotiated, Yavuz filed suit in Oklahoma state court alleging the defendants had essentially defrauded him of his investment monies. In particular, he claimed the defendants engaged in a course of conduct that made the loan note and the supposed twenty percent interest in the Tulsa property worthless. In addition to damages, Yavuz sought to impose a constructive trust on the Tulsa property.

After the 61MM Defendants removed the suit to federal district court, Adi and FPM filed a motion to dismiss for improper venue, *forum non conveniens*, and failure to state a claim.[3] The district court granted the motion to dismiss, finding venue in Oklahoma federal court improper. Specifically, the district court determined that all of Yavuz's claims arose from his investment relationship with

---

[2] The full text of the Fiduciary Agreement appears in the appendix to our earlier opinion, *Yavuz I*, 465 F.3d 418.

[3] The 61 MM Defendants had not previously raised improper venue in their responsive pleading to Yavuz's complaint.

Adi (and his corporate entities) and were governed by the Fiduciary Agreement—an agreement negotiated and executed in Switzerland. Additionally, the court noted that the Fiduciary Agreement contained a choice-of-law and forum selection clause which provided that Swiss law would govern and that Fribourg, Switzerland was the proper forum. The court therefore concluded that Switzerland was the proper forum for this dispute because "the only connection these parties have to Tulsa, Oklahoma is that one or more of the Defendants own real estate here and Yavuz is attempting to use this proceeding as a prejudgment attachment of the real estate." *Yavuz I*, 465 F.3d at 425.

### *Yavuz's First Appeal*

Yavuz appealed, arguing, among other things, the district court erred by (1) relying on the forum-selection clause in the Fiduciary Agreement to dismiss the case for improper venue, and (2) dismissing the case against the 61 MM Defendants, who were not parties to the Fiduciary Agreement and who had forfeited any objection to venue.

We reversed and remanded, finding the forum-selection clause was ambiguous and warranted further factual development. In particular, we concluded it was clear that Swiss law governed the Fiduciary Agreement. But because the forum-selection clause stated "Place of courts is Fribourg," it was unclear whether this provision was mandatory or permissive. *Id.* at 431. Additionally, we noted it was not readily apparent what claims and which parties

-5-

were governed by the Agreement's choice of Swiss courts. Because the parties had not addressed the issue below, or on appeal, we remanded the case for the district court to construe the choice-of-forum provision under Swiss law in the first instance.

More importantly, we also noted that this entire issue "may be mooted by a determination that venue is inappropriate under the *forum non conveniens* doctrine." *Id.*

### *District Court's Proceedings on Remand*

On remand, the district court ordered the parties to brief the issues we identified. In particular, the district court asked the parties to submit translations of the applicable Swiss law, focusing on whether Swiss law would consider the forum-selection clause permissive or mandatory, and which parties and claims would be governed by this clause. Additionally, the court requested the parties address the propriety of a dismissal on *forum non conveniens* grounds.

After the parties submitted competing translations of the relevant Swiss law, the district court concluded a *forum non conveniens* dismissal might be warranted. The court then held a hearing, where the parties addressed the appropriateness of such a dismissal.

Applying our *forum non conveniens* precedent, the district court first addressed the two threshold questions: (1) whether an adequate alternative forum exists and (2) whether foreign law applies to the dispute. *See Gschwind v. Cessna*

*Aircraft Co.*, 161 F.3d 602, 605–06 (10th Cir. 1998).  As to the first question, after the 61 MM Defendants agreed to execute a written agreement consenting to process and jurisdiction in Swiss court, the court concluded that Switzerland was an adequate and available forum.  Moreover, the court determined that, despite Yavuz's attempt to paint his suit as one sounding in a property dispute, his claims were essentially tort and contract claims emanating from his failed business relationship with the defendants.  Addressing the second question, the court found that, to the extent the Fiduciary Agreement controlled any of Yavuz's claims, the choice-of-law provision clearly and unambiguously stated that Swiss law governed.  And, to the extent Yavuz's claims fell outside of this Fiduciary Agreement provision, the court concluded Oklahoma conflicts-of-law principles also mandated that Swiss law apply.

Finally, the court addressed the appropriateness of a *forum non conveniens* dismissal.  It balanced the various private and public interest factors and concluded that Switzerland had a greater interest in resolving this dispute.  The court also concluded the administrative burden of applying Swiss law in an American court favored Switzerland.

Consequently, the district court dismissed the case under the *forum non conveniens* doctrine.  It did, however, impose two conditions on this dismissal: (1) the 61 MM Defendants must willingly submit themselves to the jurisdiction of the Swiss court, and (2) should the Swiss court refuse jurisdiction over the

subject-matter of Yavuz's complaint, Yavuz was free to reinstate his claims in Oklahoma courts.

## II.  Analysis

Yavuz contends the district court erred in five ways by dismissing the case on *forum non conveniens* grounds.  In particular, Yavuz argues the district court abused its discretion by finding (1) the 61 MM Defendants had not waived their right to assert *forum non conveniens*, (2) Switzerland is an available adequate alternative forum for the dispute, (3) Swiss law applied to his claims, (4) the balance of private and public interest factors tipped in favor of Switzerland as an alternative forum, and by (5) imposing insufficient conditions to ensure Swiss jurisdiction over the parties and claims in its dismissal order.

Before reaching the merits of Yavuz's arguments, we first discuss the broad legal framework underpinning the *forum non conveniens* doctrine.  We then address each of Yavuz's contentions in turn, concluding the district court neither abused its discretion in dismissing this case under the *forum non conveniens* doctrine nor in the conditions it imposed on the dismissal.

### A.  *Forum Non Conveniens* Doctrine

The Supreme Court has characterized the *forum non conveniens* doctrine as "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549

U.S. 422, 429 (2007) (citation and quotation marks omitted). "The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)) (brackets omitted). Under this doctrine,

> when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established.

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994) (internal quotation marks, brackets, and ellipses omitted); *see also Sinochem Int'l*, 549 U.S. at 429 ("Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" (quotation omitted)).

In assessing the merits of a *forum non conveniens* claim, we examine two threshold questions:

> first, whether there is an adequate alternative forum in which the defendant is amenable to process, and second, whether foreign law applies. If the answer to either of these questions is no, the *forum non conveniens* doctrine is inapplicable. If, however, the answer to both questions is yes, the court goes on to weigh the private and public interests bearing on the *forum non conveniens* decision.

*Gschwind*, 161 F.3d at 605–06 (internal citations omitted).

Although there is ordinarily a "strong presumption in favor of hearing the case in the plaintiff's chosen forum," a foreign plaintiff's choice of forum "warrants less deference." *Id.*; *see also Sinochem Int'l*, 549 U.S. at 430 ("When the plaintiff's choice is not its home forum . . . the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." (citation and internal quotation marks omitted)). Notably, "[w]hen the plaintiff is foreign, the private and public interest factors need not so heavily favor the alternate forum." *Gschwind*, 161 F.3d at 606.

Finally, our review of the district court's dismissal on *forum non conveniens* grounds is quite limited. The *forum non conveniens* determination is "committed to the sound discretion of the trial court"; we therefore review the trial court's determination for a "clear abuse of discretion." *Id.* We must "carefully examine the reasoning of the district court"—but where the trial court "has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.*

**B. Failure to Raise *Forum Non Conveniens* in an Initial Responsive Pleading is Not a Waiver**

As an initial matter, Yavuz argues the district court erred in dismissing the case because the 61 MM Defendants filed a responsive pleading, but never raised the defense of improper venue or *forum non conveniens*. Yavuz contends the 61 MM Defendants' failure to raise *forum non conveniens* as a defense in their initial responsive pleading waived their right to challenge venue.[4]

Yavuz's waiver argument is misplaced. Federal Rule of Civil Procedure 12(h) provides that a party waives an improper venue defense under Rule 12(b)(3) if the party fails to affirmatively assert such a defense in its initial responsive pleading. Although Yavuz's contention regarding the 61 MM Defendants is correct with respect to a Rule 12(b)(3) motion for improper venue, *Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir. 1996) ("A party waives the right to challenge venue if he fails to raise that defense either in his responsive pleading or in a motion to dismiss . . . ."), *forum non conveniens* is an entirely separate and distinct doctrine. Therefore, Rule 12 is inapplicable.

Rather, as the defendants properly note, *forum non conveniens* is a discretionary doctrine which is not waived by a party's failure to raise it in an

_____

[4] Although Adi and FPM responded to Yavuz's complaint by filing a motion to dismiss asserting *forum non conveniens* as a defense to suit in Oklahoma federal court, the 61 MM Defendants merely filed a document stating they had no objection to this motion. *See Yavuz I*, 465 F.3d at 424. By that time, the 61 MM Defendants had already filed their answer to Yavuz's complaint and had successfully removed the case to Oklahoma federal district court.

initial responsive pleading. Although only a few courts have directly addressed this issue, those that have uniformly recognize "a motion to dismiss based on *forum non conveniens* is not a motion to dismiss for improper venue. Under the doctrine of *forum non conveniens*, a court has the discretion to dismiss a case 'even if jurisdiction and proper venue are established.'" *Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F. Supp. 2d 749, 765 (N.D. Cal. 2004) (quoting *Am. Dredging Co.*, 510 U.S. at 448). Unlike objections to venue or personal jurisdiction, an objection on *forum non conveniens* grounds is not waived by a defendant failing to raise the issue in its first responsive pleading. *Abiola v. Abubakar*, 267 F. Supp. 2d 907, 918 (N.D. Ill. 2003); *Snam Progetti S.P.A. v. Lauro Lines*, 387 F. Supp. 322, 322–23 (S.D.N.Y. 1974) (same); *see Estate of Thomson ex. rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 364 (6th Cir. 2008) (noting that a district court has the inherent authority to dismiss a case under the *forum non conveniens* doctrine and a party's failure to move for such a dismissal is not prohibitive); *see also* 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3828 (3d ed. 2008) ("In modern litigation, there is generally no time limit on when a motion to dismiss for *forum non conveniens* must be made, which differentiates it from the time limits on a motion to dismiss for improper venue set out in Rule 12(h) . . . .").

Hence, the 61 MM Defendants' failure to raise a *forum non conveniens* defense neither (1) precluded the district court from dismissing the case on that ground, nor (2) waived the 61 MM Defendants' right to assert arguments in favor of such a dismissal even though they had already filed an answer and several other pleadings. In fact, Yavuz fails to point to—nor could we find—any contrary authority regarding the waiver of a party's right to a dismissal on *forum non conveniens* grounds. The only limitation we could discern, and one not at issue here, is that some courts have required a party to proffer a motion to dismiss for *forum non conveniens* within a reasonable time after the party knows or could have reasonably known the facts or circumstances serving as the basis for such a motion. *E.g.*, *Cable News Network L.P., L.L.L.P v. CNNEWS.com*, 177 F. Supp. 2d 506 (E.D. Va. 2001), *aff'd in part, vacated in part on other grounds by*, 56 F. App'x 599 (4th Cir. Jan 23, 2003). But the filing of the motion in this case was not tardy, nor did it lead to any prejudice to Yavuz.

We therefore find the 61 MM Defendants did not waive their right to a dismissal on *forum non conveniens* grounds. Consequently, we turn to whether the district court abused its discretion in analyzing the threshold requirements of *Gschwind*.

## C.  *Forum Non Conveniens***: Threshold Determinations**

Yavuz contends the district court erred in its analysis of the two threshold questions in the *forum non conveniens* determination: whether there is an

-13-

adequate alternative forum in which the defendants are amenable to process, and whether foreign law applies to the suit. *See Gschwind,* 161 F.3d at 605–06. Yavuz argues Switzerland is not an adequate alternative forum and that the district court erred in finding Swiss law governed the dispute. We disagree.

### *1. Switzerland is an Adequate Alternative Forum*

Yavuz first argues Switzerland is not an adequate available alternative forum because all the defendants are not subject to jurisdiction in a Fribourg, Switzerland court. Yavuz further asserts Switzerland is an inadequate forum because he may not be able to pursue claims in a Swiss court identical to those he has raised in his Oklahoma suit. Thus, according to Yavuz, the defendants have not met their burden to prove Switzerland is an adequate and alternative forum. *See Gschwind*, 161 F.3d at 606.

The availability requirement is usually satisfied, however, where the defendants concede to be amenable to process in the alternative forum. *Id.* (citing *Piper Aircraft*, 454 U.S. at 254 n.22). Further, the remedy provided by the alternate forum "need not be the same as that provided by the American court." *Id.* at 607. Instead, the alternative forum is not inadequate unless its remedy is "so 'clearly inadequate . . . that it is no remedy at all.'" *Id.* (quoting *Piper Aircraft*, 454 U.S. at 254–55).

### *Swiss Courts are Available for Yavuz's Dispute*

Yavuz contends Adi is not amenable to service of process in Switzerland and that the district court's order failed to ensure Adi would accept a Swiss court's jurisdiction over him. He further argues Sigofine and Euroeast—yet to be served as parties to this suit—may not be subject to service in Switzerland. His contentions are without merit.

First, it was Adi (and FPM) who moved for a dismissal on *forum non conveniens* grounds, stating that Fribourg, Switzerland would be the preferable—if not mandatory—location for Yavuz's suit. Second, Adi's attorney, on behalf of his client, expressly consented to service of process in Switzerland and to accept jurisdiction of a Swiss court. At oral argument in *Yavuz I*, Adi's attorney made the same representation. Oral Arg., Mar. 6, 2006, at 37:54–38:24; *see* Aple. Br. at 37 (Adi, through counsel, stating that he "is amenable to process in Switzerland and would participate in a proceeding there"); *see also Gschwind*, 161 F.3d at 606 (stating that a defendant's concession to service of process in an alternative forum is usually sufficient to make that forum available). We therefore reject Yavuz's claim that Adi may not be amenable to process in Switzerland.

Yavuz's claims regarding defendants Sigofine and Euroeast likewise fail. In his complaint, Yavuz himself alleged that both of these defendants maintain offices in Fribourg, Switzerland—making them amenable to process there.

-15-

Additionally, Yavuz has never served either of these parties; they were never made parties to the district court action, nor are they parties to this appeal. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."). Consequently, we can only conclude Yavuz must not believe Sigofine and Euroeast are essential to his case, nor does he present any arguments that compel us to view their amenability to process as critical to the *forum non conveniens* determination.

In sum, the district court did not abuse its discretion in finding that Switzerland was an available alternative forum for this dispute.

### *Swiss Courts are Adequate*

Yavuz also maintains Switzerland is an inadequate forum because some of his claims and requested remedies may not be available in Swiss courts. In particular, he argues his claim seeking to impose a constructive trust on the Tulsa property is "*in rem* and exclusive venue lies where the land is located." Aplt. Br. at 29. Because a Swiss court would have no jurisdiction over the Tulsa property, Yavuz asserts that the district court erred in finding that Switzerland was an adequate alternative forum.

But as the defendants correctly point out, Yavuz is conflating a possible remedy—a constructive trust on the defendants' real property—with the nature of

-16-

his lawsuit—a tort and contract suit arising out of a failed business relationship between the defendants and him.

Yavuz creatively attempts to fashion his claims against the defendants as arising out of a dispute over the Tulsa property—claims which could not be brought in Switzerland. But his argument misses the forest for the trees. As we noted in *Yavuz I*, Yavuz's complaint, although it seeks a constructive trust and restitution as remedies, essentially contends the defendants engaged in an over two-decade-long conspiracy to defraud him of his investment of money with Adi. *See* 465 F.3d at 423–24. For the following three reasons, we reject Yavuz's narrow view of his claims against the defendants.

*First*, Yavuz's complaint itself undermines his attempt to construe this lawsuit as anything but an investment dispute comprising contract and tort claims. For example, Yavuz alleges the "defendants . . . committed an *implied breach of contract* when they accepted his money . . . and . . . subsequently refused to acknowledge [his] appropriate and proper share in the entities and/or property." *Id.* at 423–24 (emphasis added) (brackets omitted) (quoting Yavuz's amended complaint). Yavuz also asserts the "defendants were *unjustly enriched* by having the use of [his] invested funds for over twenty years." *Id.* at 423 (emphasis added). These claims are clearly based on Yavuz's failed business relationship with the defendants and, by their own words, admit they arise out of contract law.

-17-

Similarly, Yavuz references the same failed business relationship for his allegations of common law fraud, constructive fraud, conspiracy, and embezzlement. He contends the "defendants' communications to [him,] . . . constituted common-law fraud," were used "to gain[] an advantage . . . by misleading [him] to his prejudice," and the "defendants conspired to obtain [a substantial amount of money] through false and fraudulent statements." *Id.* at 423–24. In particular, he alleges the defendants "structur[ed] the investment transaction so that his investment would be worthless." *Id.* at 424. At bottom, Yavuz alleges the defendants conspired with one another and engaged in tortious conduct to deprive him of his monetary investment.

*Second*, nothing in the Fiduciary Agreement or any other legal documents before the district court appeared to grant Yavuz an interest in any land. Rather, his relevant investment was to be "20% in the share capital of Madonna BV [the predecessor of 61 MM Corp.]." *Id.* at 422 (quoting the Fiduciary Agreement).[5] Accordingly, his claims arise out of his business relationship with the defendants, and largely sound in contract and tort.

---

[5] Yavuz asserts that two letters, one from defendant FPM and another from named-defendant Euroeast, evince his ownership interest in the Tulsa property. These letters, however, are not inconsistent with the Fiduciary Agreement which only indicated he was to have a twenty percent share in the owning-entity, not any specific property. To the extent these letters are relevant to this dispute, they may be evidence of fraud or misleading statements by the defendants, but they do not change the nature of this dispute from one centered on a business relationship to a property dispute.

-18-

*Third*, as to Yavuz's constructive trust claim, he conflates a potential

remedy with the substantive cause of action. Oklahoma state courts have

recognized the purpose of a constructive trust is to remedy fraudulent conduct or

prevent unjust enrichment:

> An implied trust or constructive trust arises by operation of law. It is imposed against an individual when the individual obtains a legal right to property through fraudulent, abusive means or through a method which violates equity and good conscience. A constructive trust is one of equity's most powerful fraud-rectifying devices. The primary reason for imposing a constructive trust is to avoid unjust enrichment.

*Delk v. Markel Am. Ins. Co.*, 81 P.3d 629, 640 n.48 (Okla. 2003) (citation

omitted). "A constructive trust is a remedial device used by courts to enforce

substantive rights, it is not itself a substantive right." *Howell Petroleum Corp. v.*

*Samson Res. Co.*, 903 F.2d 778, 780 (10th Cir. 1990) (applying Oklahoma law)

(internal citations omitted). In other words, a constructive trust may be a valid

remedy in a successful unjust enrichment or fraud action in Oklahoma. *See*

*Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 200 (Okla. Civ. App. 1999); *see*

*generally* George G. Bogert et al., The Law of Trusts and Trustees § 471 (2008)

(describing a constructive trust as a "fraud-rectifying" trust and not an

"intent-enforcing" trust).

We find no error in the district court's construction of Yavuz's dispute with

defendants as one arising from a failed investment relationship.

And, when this case is properly construed as a contract and tort dispute, the lack of a particular remedy or cause of action in the alternative Swiss forum does not necessarily render that venue inadequate. Swiss courts have routinely been held adequate for contract and tort claims similar to those Yavuz is raising here. *See, e.g.*, *Dickson Marine, Inc. v. Panalpina*, 179 F.3d 331, 342 (5th Cir. 1999) (holding Switzerland was an adequate alternative forum that "recognize[s] causes of action for both contract and tort"); *Alpine Atlantic Asset Mgmt. AG v. Comstock*, 552 F. Supp. 2d 1268, 1277–78 (D. Kan. 2008) (finding Switzerland an adequate alternative forum for similar tort- and contract-based claims); *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 222–23 (S.D.N.Y. 2007) (finding Swiss courts adequate for tort claims); *Do Rosário Veiga v. World Meteorological Org.*, 486 F. Supp. 2d 297, 304 (S.D.N.Y. 2007) ("[C]ourts . . . have repeatedly found that Switzerland is an adequate forum for adjudication of civil disputes involving common law claims based on contract and tort principles . . . .").

Additionally, a foreign venue may be adequate even if it does not have the same procedural safeguards or the identical remedies available in the United States. *See Piper Aircraft*, 454 U.S. at 265. Thus, Switzerland is not inadequate just because it may not permit the identical remedies that Yavuz's Oklahoma suit seeks, such as his request for punitive damages or a constructive trust. *See Gschwind*, 161 F.3d at 607 ("[T]he remedy provided by the alternate forum need not be the same as that provided by the American court . . . ."); *see also DTEX,*

-20-

*LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007) ("'Adequacy'

does not require that the alternative forum provide the same relief as an American

court.").

Similarly, even though certain claims, such as Yavuz's RICO claim,[6] may

not be available in Swiss courts, Switzerland may still be an adequate forum. *See*

*Piper Aicraft*, 454 U.S. at 247 ("The possibility of a change in substantive law

should ordinarily not be given conclusive or even substantial weight in the *forum*

*non conveniens* inquiry."); *In re Factor VIII or IX Concentrate Blood Prods.*

*Litig.*, 484 F.3d 951, 957 (7th Cir. 2007) (noting that "*Piper Aircraft* establishes

that the [foreign] law . . . need not be identical to U.S. law, or even as favorable

to plaintiffs"); *Dickson Marine Inc.*, 179 F.3d at 342 (same). Nothing in the

record or Yavuz's arguments persuades us that Switzerland does not offer

sufficient procedural protections and substantive avenues for Yavuz to hold the

defendants liable for their allegedly unlawful business dealings.

Finally, to the extent any monetary damages may be insufficient to make

Yavuz whole, Yavuz is not without recourse. Nothing prevents Yavuz, after a

successful suit in Swiss courts, from enforcing his Swiss judgment in the United

_____

[6] A plaintiff's inability to pursue a RICO claim in a foreign jurisdiction, on its own, does not preclude a *forum non conveniens* dismissal. *See, e.g.*, *Windt v. Qwest Commc'ns Int'l., Inc.*, 529 F.3d 183, 193 (3d Cir. 2008); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1296 (9th Cir. 1998); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 952 (11th Cir. 1997); *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1146 (5th Cir. 1989).

States by seeking a constructive trust or an attachment of the defendants' property, such as the Tulsa property.

The district court therefore did not abuse its discretion by holding Switzerland to be an available and adequate alternative forum for Yavuz's lawsuit.

### 2. *Swiss Law Applies*

But this does not end the threshold *forum non conveniens* inquiry. We must still determine whether the district court erred in finding that Swiss law governs this dispute. We find it did not.

Here, the district court concluded: "Swiss law applies under both the choice of law provision in the fiduciary agreement and under Oklahoma choice of law principles." App., Vol. III at 1019 (Dist. Ct. Hr'g, Oct. 16, 2008). Yavuz argues the district court's choice of law analysis was "deeply flawed." Aplt. Br. at 37. He claims the court's analysis was "cursory," was "made without benefit of a record," and ignored his "well pleaded allegations" that a substantial portion of the defendants' unlawful activities occurred in Oklahoma. *Id.* at 38. Further, Yavuz contends that his tort and implied contract claims should not be governed by the Fiduciary Agreement's choice-of-law provision.

We review a district court's choice-of-law determination de novo. *Gschwind*, 161 F.3d at 608. If domestic law is applicable to the case, the *forum non conveniens* doctrine is inapplicable. *Rivendell Forest Prods., Ltd. v.*

*Canadian Pac. Ltd.*, 2 F.3d 990, 993 n.4 (10th Cir. 1993). We agree with the district court's conclusion for two reasons.

First, Swiss law governs Yavuz's claims that arise directly from the Fiduciary Agreement. This includes his allegations of the defendants' breach of their fiduciary duties under the Agreement as well as his cause of action for accounting. In *Yavuz I*, we determined: "What is not ambiguous is that the parties agreed that Swiss law governs the Fiduciary Agreement." 465 F.3d at 431. This holding from *Yavuz I* is the law of the case and we are bound by it in this appeal. *See Ford v. Pryor*, 552 F.3d 1174,1179 (10th Cir. 2008) (citing *Weston v. Harmatz*, 335 F.3d 1247, 1255 (10th Cir. 2003) (stating holding of prior appeal "must be followed by the appellate court in subsequent appeals")).

Second, to the extent Yavuz's fraud and breach-of-implied contract claims may not be governed by the Agreement's choice-of-law provision,[7] Oklahoma conflict-of-law principles apply. *See Elec. Distrib., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999) ("[I]n making a choice of law determination, a federal court sitting in diversity must apply the choice of law provisions of the

---

[7] As he did in *Yavuz I*, Yavuz claims the defendants' conduct that preceded and proceeded the Fiduciary Agreement should not be controlled by the Fiduciary Agreement's choice-of-law provision. Although its not entirely clear from his arguments, Yavuz appears to also contend that some of the defendants' fraudulent communications originated from Oklahoma. He relies on the situs of the Tulsa property to contend the defendants' tortious conduct, especially the 61 MM Defendants, was directed at, occurred within, and implicated Oklahoma property interests.

forum state in which it is sitting." (internal quotation marks omitted)). And, Oklahoma conflicts of law supports the district court's conclusion that Swiss law governs these contract and tort claims as well.

For Yavuz's implied contract claims, Oklahoma conflicts-of-law principles dictate that *lex loci contractus* controls—i.e., "the nature, validity, and interpretation of a contract are governed by the law where the contract was made." *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1034 (Okla. 2006). For his tort claims, including his allegations of fraud and conspiracy by the defendants, Oklahoma applies the "most significant relationship" test, looking at "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred." *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103–04 (10th Cir. 1999) (quoting *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974)).

Both of these tests point to Swiss law as governing this dispute. To gain the benefit of Oklahoma law, Yavuz again attempts to frame his claims as arising from a property dispute. But his own complaint belies this assertion.

Yavuz himself states he "brings this action to obtain relief arising out of his *investment of money* with the Defendants." App., Vol. I at 60–61 (emphasis added). As the district court concluded: "Here the crux of [Yavuz's] second

amended and restated petition is that the plaintiff was deprived of his investment which was made and reaffirmed in Switzerland. Switzerland was also where the agreement was executed, where Adi and FPM entered into oral and implied contracts. The alleged conduct of the defendants occurred in large measure in Switzerland." App., Vol. III at 1019 (Dist. Ct. Hr'g, Oct. 16, 2008). The district court also properly found that "Adi was a resident of Fribourg [Switzerland] at the time of Yavuz's initial investment and is still a Swiss citizen and resides in Syria . . . . Yavuz is a citizen and resident of Turkey [and] . . . traveled to Switzerland to negotiate with Adi and execute the agreement." *Id.* at 1020.

Nothing in Yavuz's arguments or in the record casts doubt on the conclusion that the entirety of Yavuz's monetary investment with the defendants and the bulk of the parties' interactions (including the allegedly fraudulent and misleading conduct by the defendants) occurred outside the United States. Indeed, Yavuz's initial monetary investment—his deposit of currency—occurred in Switzerland. Moreover, the parties' relationship between that time and the date they executed the Fiduciary Agreement in 1989 occurred mostly, if not entirely, outside the United States. Subsequent communications, while occasionally emanating from the United States, related to the parties' performance under the Fiduciary Agreement and occurred outside the United States as well. Swiss law therefore is more appropriate than Oklahoma law to govern any of Yavuz's claims

that may not fall within the exclusive purview of the Fiduciary Agreement and its choice-of-law provision.[8]

For these reasons, we find no error in the district court's conclusion that Swiss law governs this dispute.

\* \* \*

In sum, the district court did not abuse its discretion in applying the two threshold questions of the *forum non conveniens* analysis. The court properly concluded that Switzerland was an adequate alternative forum and that Swiss law applied to Yavuz's claims.

We thus turn to the final factors in considering the *forum non conveniens* doctrine: the requisite balancing of private and public interest factors as between the two alternative forums—Oklahoma and Switzerland.

## D. *Forum Non Conveniens*: Private and Public Interest Factors

Yavuz next contends the defendants failed to satisfy "the strong burden of proof required to establish *forum non conveniens*." Aplt. Br. at 34. In particular, he claims the district court abused its discretion by finding the public and private interests favor Switzerland as an alternate forum. We disagree.

---

[8] We also note that because the district court conditioned its *forum non conveniens* dismissal on acceptance of jurisdiction by a Swiss court, if the Swiss court determines that it is without jurisdiction because Swiss law does not apply, Yavuz can return to Oklahoma court to once again prosecute his claims against the defendants.

As an initial matter, if Yavuz were a resident of Oklahoma, he would have correctly recited the burden on the defendants. But Yavuz is a citizen and resident of Turkey. Because he is a foreign plaintiff, "the private and public interest factors need not so heavily favor the alternate forum." *Gschwind*, 161 F.3d at 606. With this in mind, we turn to the district court's balancing of the appropriate factors.

Once a district court determines that an adequate alternative forum exists and that foreign law applies to the dispute, it must consider a range of private and public interest factors before dismissing a case under the *forum non conveniens* doctrine. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive." *Id.* at 606.

Public interest factors that are part of the balancing include: "(1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the

appropriateness of having diversity cases tried in a forum that is familiar with the governing law." *Id.*

Here, the district court concluded "that both factors relating to private interest and the factors relating to public interest weigh in favor of dismissal on *forum non conveniens* grounds." App., Vol. III at 1020 (Dist. Ct. Hr'g, Oct. 16, 2008). In particular, with respect to the private interest factors, the court concluded that:

> The fiduciary agreement was negotiated and executed in Switzerland. A majority of the sources of proof and witnesses are found there in Switzerland rather than in Tulsa, Oklahoma. Adi was a resident of Fribourg at the time of Yavuz's initial investment and is still a Swiss citizen and resides in Syria which is closer to Switzerland than Tulsa. Yavuz is a citizen and resident of Turkey, also closer to Switzerland than Oklahoma. Yavuz traveled to Switzerland to negotiate with Adi and execute the agreement. Fribourg is closer to sources of proof and witnesses and more convenient and more efficient and practical.

*Id.* Additionally, addressing the public interest factors, the court found:

> [A]pplying Swiss law in Oklahoma could and in fact has already created administrative difficulties. Requiring Swiss law experts in translations may not adequately explain Swiss law and in fact I think this record will show that without Swiss law experts sitting at the bench it becomes largely a matter of the sides throwing out to the Court competing and in some cases completely irreconcilable positions with regard to what Swiss law is. That situation burdens the Court, which obviously is not as familiar with Swiss law as a Swiss court. Finally, the forum selection clause in the fiduciary agreement in the *forum non conveniens* analysis is also an indication that Fribourg is the appropriate forum for this dispute.

*Id.* at 1020–21. In this assessment, we find no abuse of discretion by the district court.

### 1. *Private Interest Factors*

Yavuz first claims the defendants failed to meet their burden to show the private interest factors weigh in favor of Switzerland as an alternative forum. Although Yavuz submitted affidavits that certain 61 MM Defendants' witnesses may be crucial to his case—all of whom apparently reside in Oklahoma—he fails to recognize that the bulk of the witnesses are *party* witnesses.

For example, defendant Adi, the individual Yavuz claims is the central figure in this dispute, is a resident of Syria (and a former resident of Switzerland). Defendant FPM, allegedly an alter ego of Adi, is a Swiss entity and maintains its principal place of business in Fribourg. Yavuz himself is a citizen of Turkey. Further, Yavuz has previously filed suit in Switzerland seeking to gain access to certain FPM documents— acknowledging that, to a certain extent, evidence of FPM's involvement may be located in Switzerland. These party witnesses are both critical to this case and are physically located in or near Switzerland.

Yavuz once again concentrates too heavily on the theory that his suit revolves around the Tulsa property. As explained above, the central issue in this case is the business relationship between Yavuz and the defendants. This relationship was consummated in Switzerland, involved mostly foreign entities, and transpired almost entirely outside the United States. Consequently, the district court did not abuse its discretion in assuming that critical information, including relevant witnesses and documents associated with these party witnesses,

-29-

would be located closer to Switzerland, rendering Swiss courts more convenient. *See Piper Aircraft*, 454 U.S. at 258 (stating that defendants do not need to provide exacting detail regarding the location of witnesses and documents, but rather "defendants must provide enough information to enable the District Court to balance the parties' interests").

### 2. *Public Interest Factors*

Similarly, Yavuz argues that Oklahoma has a stronger interest in deciding this case than Switzerland. Focusing on the Tulsa property, he contends that Swiss courts would not be able to adjudicate any rights with respect to the land. Again, his argument is misplaced.

First, the district court noted the administrative headache this case has already caused. Specifically, the court found the difficulty translating Swiss law, determining its application to the Fiduciary Agreement and to the dispute as a whole, and rectifying the parties' disparate claims for relief put a spotlight on the relative convenience of the Swiss forum. Although this is not dispositive on its own, the administrative burden on the court is a relevant and appropriate consideration in the district court's balancing. *See id.* at 259 (stating the need to apply foreign law and the district court's lack of familiarity with the law are appropriate considerations).

Second, when this case is properly framed as a dispute over a failed business relationship, the district court's description of Oklahoma's interest in

resolving this dispute as minimal is not in error. Rather, Switzerland—as the situs of the relevant agreement between Yavuz and certain defendants in the early 1980's, the subsequent Fiduciary Agreement in 1989, and much of the communications since—has a far greater interest in resolving this dispute. If Yavuz's allegations of fraud, embezzlement, and breach of contract are true, Switzerland has a substantial interest in ensuring that conduct occurring within its borders, involving its entities, and, at least in part, involving contracts governed by its laws are resolved by its courts and under a faithful reading of its laws. We therefore find no abuse of discretion in the district court's balancing of the public interest factors in favor of Switzerland as an alternative forum.

In sum, the district court properly determined that Switzerland was an adequate and available alternative forum and that Swiss law governed this dispute. The court then appropriately balanced the public and private interest factors and was within its discretion to dismiss this case on *forum non conveniens* grounds.

### E.  The District Court's Conditional Dismissal

Finally, Yavuz argues the district court's *forum non conveniens* dismissal fails to take into account several necessary conditions for him to successfully bring suit in a Swiss court. In particular, Yavuz argues the district court's order failed to ensure (1) defendant Adi is subject to service of process in Switzerland, (2) defendants do not employ any possible statute of limitations defenses in a

Swiss proceeding, and (3) the attendance of non-party witnesses and production of documents.

During the remand proceedings, after the district court noted it was leaning towards a *forum non conveniens* dismissal, Yavuz's counsel expressed his concern regarding the 61 MM Defendants and their amenability to suit in Switzerland. In response, the 61 MM Defendants agreed to enter into a written stipulation that they would submit to the jurisdiction of the court in Fribourg, Switzerland. As a result, the district court dismissed the suit with two key conditions:

> (1) That the Defendants, 61 MM, LTD and 61 MM Corp., enter into a written agreement with Plaintiff to submit to the jurisdiction of the courts of Fribourg, Switzerland;
>
> (2) This case may be reinstated in the event that jurisdiction in the Swiss courts is declined.

Aplt. Br. at Attach. A (Dist. Ct. Order, Oct. 17, 2008). While such conditions are within the district court's discretion, they are not mandatory for a proper *forum non conveniens* dismissal. *E.g.*, *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996) (finding that a district court may attach conditions to a *forum non conveniens* dismissal to which the defendants, as the moving party, may agree).

Yavuz contests the efficacy of these two requirements, and, for the first time on appeal, claims the district court failed to impose additional conditions. We find no clear abuse of discretion here.

First, as discussed above, Adi appears to be amenable to service in Switzerland. Second, it is unclear from Yavuz's cursory arguments why the district court needs to police legal defenses that could be raised in the Swiss forum. Without any discussion on the record below, we cannot conclude the district court abused its discretion by not sua sponte imposing additional conditions on the dismissal. Finally, we are not convinced that a Swiss court's procedures would be inadequate to ensure the attendance of witnesses and proper production of documents by the defendants.

In short, the district court imposed the two conditions the parties agreed stood in the way of a proper *forum non conveniens* dismissal. The district court ensured the attendance of the 61 MM Defendants—the only defendants about whom Yavuz expressed concerns regarding their amenability to process and suit in Switzerland. The court also conditioned its dismissal on the Swiss court's assumption of jurisdiction over the dispute and permitted Yavuz to reinstate his claims in Oklahoma federal court, without prejudice, should the Swiss court decline to hear the case.

For these reasons, the district court's conditional dismissal was not in error.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's *forum non conveniens* dismissal.