**FILED**
United States Court of Appeals
Tenth Circuit

**February 9, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ARCHANGEL DIAMOND
CORPORATION LIQUIDATING
TRUST,

     Plaintiff - Appellant,

v.

OAO LUKOIL,

     Defendant - Appellee.

No. 14-1510

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:12-CV-00041-RM-MJW)**

---

Bruce S. Marks, of Marks & Sokolov, LLC, Philadelphia, Pennsylvania (Chad M.
McShane, of Robinson Waters & O'Dorisio, P.C., Denver, Colorado, with him on
the briefs), for Plaintiff-Appellant.

Frederick J. Baumann, of Lewis Roca Rothgerber LLP, Denver, Colorado
(Douglas B. Tumminello, of Lewis Roca Rothgerber, LLP, Denver, Colorado, and
Michael K. Swan of Akin Gump Strauss Hauer & Feld, L.L.P., Houston, Texas,
with him on the brief), for Defendant-Appellee.

---

Before **BRISCOE, MATHESON,** and **BACHARACH**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

Plaintiff Archangel Diamond Corporation Liquidating Trust, as successor-in-interest to Archangel Diamond Corporation (collectively, "Archangel"), appeals the dismissal of its civil case against defendant OAO Lukoil ("Lukoil"), in which it alleged claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), breach of contract, and commercial tort law. The district court dismissed the case for lack of personal jurisdiction over Lukoil and under the doctrine of forum non conveniens. Archangel appeals the dismissal on both grounds. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and, finding no abuse of discretion in the district court's dismissal under forum non conveniens, we affirm.

I

Archangel Diamond Corporation was a Canadian company and is now bankrupt. The liquidating trust is located in Colorado. In 1993, Archangel entered into an agreement with State Enterprise Arkhangelgeology ("AGE"), a Russian state corporation, regarding a potential license to explore and develop diamond mining operations in the Archangelsk region of Russia. Archangel provided funding, and AGE bid on and won the license. Then, in 1994, Archangel and AGE agreed that Archangel would provide additional funds and that the license would be transferred to their joint venture company. However, the license was never transferred and remained with AGE. In 1995, AGE was privatized and became Arkhangelskgeoldobycha ("AGD"), and the license was

transferred to AGD.

In 1996, diamonds worth an estimated $5 billion were discovered within the license region. For the next several years, Archangel alleges, AGD alternated between promising to transfer the license and refusing to do so, causing Archangel to lose its investment and, ultimately, to become insolvent. In 1997, Archangel moved its principal place of business to Colorado, though it remained a Canadian company. In 1998, Lukoil acquired a controlling stake in AGD, and in 2000 or 2001, Lukoil acquired the remaining interest in AGD; thus, AGD is now a wholly owned subsidiary of Lukoil.

In August 1998, Archangel initiated arbitration proceedings against AGD and Lukoil. Pursuant to their agreement, the arbitration took place in Stockholm, Sweden. In this first arbitration, the arbitrators concluded that they had jurisdiction to hear Archangel's claims only against AGD, but not those asserted against Lukoil. In July 1999, while the arbitration with AGD was still pending, AGD and Archangel agreed that AGD would transfer the license to their joint venture, resolving the dispute. However, AGD did not honor the 1999 agreement and did not transfer the license. When AGD failed to honor the agreement, Archangel reactivated the Stockholm arbitration, but the arbitrators this time concluded that they lacked jurisdiction to arbitrate the dispute even as to AGD.

In November 2001, Archangel sued AGD and Lukoil in Colorado state court. The complaint alleged breach of contract and a variety of torts, including

3

fraud and intentional interference with contractual obligations. AGD and Lukoil then removed the case to federal district court in Colorado. The district court remanded the case, concluding that it lacked subject-matter jurisdiction, as all of the claims were state law claims.

In 2002, the state trial court dismissed the case against both AGD and Lukoil based on lack of personal jurisdiction and forum non conveniens. See Archangel Diamond Corp. Liquidating Trust v. OAO Lukoil, 75 F. Supp. 3d 1343, 1354–55 (D. Colo. 2014) (discussing procedural history of the case). Later that year, Archangel—which was running out of money—moved its principal place of business back to Canada. In 2004, the Colorado Court of Appeals affirmed the dismissal. Archangel Diamond Corp. v. Arkhangelskgeoldobycha, 94 P.3d 1208, 1210 (Colo. Ct. App. 2004). The court did not rule on forum non conveniens, concluding that the trial court should not have proceeded to consider the issue after concluding the dismissal was appropriate for lack of jurisdiction. Id. at 1220.

In 2005, the Colorado Supreme Court affirmed the dismissal as to AGD, reversed as to Lukoil, and remanded (leaving Lukoil as the sole defendant). Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1190, 1200–01 (Colo. 2005) (concluding that Archangel had failed to show personal jurisdiction over AGD, but had shown general personal jurisdiction over Lukoil). The Colorado Supreme Court therefore remanded to the state intermediate appellate court with

4

instructions to consider any other remaining issues relating to Lukoil. Id. at 1201.

On remand, the Colorado Court of Appeals reversed the trial court's previous dismissal on forum non conveniens grounds, which it had not addressed before, and remanded to the trial court for further proceedings. Archangel Diamond Corp. v. Arkhangelskgeoldobycha, No. 02-CA-2368, 2006 WL 1768313, at *1 (Colo. Ct. App. June 29, 2006) (unpublished). With the case again before the trial court, Lukoil and AGD requested an evidentiary hearing on the issue of personal jurisdiction and renewed their motion to dismiss. The court granted their motion to hold an evidentiary hearing, and the parties engaged in jurisdictional discovery. In 2008 and early 2009, the case was informally stayed while the parties discussed settlement and conducted discovery.

By June 2009, Archangel had fallen into bankruptcy due to the expense of the litigation. In November 2009, Archangel filed an amended complaint, which added claims under RICO, 18 U.S.C. § 1961 et seq., and the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. § 18-17-104. Archangel then removed the case to federal district court in Colorado. On Lukoil's motion and over the objection of Archangel, the district court referred the matter to the bankruptcy court, concluding that the matter was related to Archangel's bankruptcy proceedings. Lukoil then moved the bankruptcy court to abstain from hearing the matter, and the bankruptcy court concluded that it should abstain. The bankruptcy court remanded the case to the Colorado state trial court.

5

The state trial court again dismissed the action. It concluded that, even considering the new allegations in the amended complaint, the court lacked personal jurisdiction over AGD and Lukoil. Archangel again appealed; the Colorado Court of Appeals affirmed, and the Colorado Supreme Court denied certiorari.

While these state-court appeals were still pending, Archangel filed the present action in federal district court. To establish the court's jurisdiction, Archangel alleged that Lukoil had a wide variety of jurisdictional contacts with Colorado and the United States as a whole. These included communications directed at Archangel, and general business contacts. The district court analyzed personal jurisdiction under the Colorado long-arm statute and under Federal Rule of Civil Procedure 4(k)(2). Then, the court considered forum non conveniens in the alternative. The court dismissed the case, holding in favor of Lukoil on both jurisdictional and forum non conveniens grounds. The court concluded that, while Archangel's choice of forum was owed substantial deference, dismissal based on forum non conveniens was nevertheless appropriate. 75 F. Supp. 3d at 1376–77, 1381. The court summarized:

> Russia is an available and adequate alternate forum to hear this case. If the case were heard here, foreign law would apply at least to part of the controversy between the parties. And, while the private interests weigh slightly in favor of [Archangel], the public interests weigh heavily in favor of Lukoil. On this record, the Court finds that Lukoil has met its heavy burden of showing that dismissal under *forum non conveniens* is appropriate, in light of Lukoil's affirmative

6

representation to this Court that it consents to the jurisdiction of the Russian courts and agrees not to raise the statute of limitations as a defense to [Archangel's] claims.

Id. at 1381.

II

We review the district court's dismissal on the grounds of forum non conveniens for abuse of discretion; "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981); Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd., 703 F.3d 488, 494 (10th Cir. 2012) (citing Piper Aircraft, 454 U.S. at 257). Having concluded that this case can be resolved on forum non conveniens grounds, we decline to address the jurisdictional issues. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007) ("[A] court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.").

There are two threshold requirements for a forum non conveniens dismissal. First, there must be an "adequate alternative forum where the defendant is amenable to process." Fireman's Fund, 703 F.3d at 495 (quoting Gschwind v. Cessna Aircraft Co., 161 F.3d 602, 605 (10th Cir. 1998)). Second,

"the court must confirm that foreign law is applicable," id., because forum non conveniens is improper if foreign law is not applicable and domestic law controls, Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd., 2 F.3d 990, 994 (10th Cir. 1993). We review the district court's choice-of-law analysis de novo. Gschwind, 161 F.3d at 608. If there is no adequate alternative forum or if the issue is controlled by American law, the forum non conveniens doctrine is inapplicable. Fireman's Fund, 703 F.3d at 495 (citing Gschwind, 161 F.3d at 605–06). But if both threshold requirements are met, the court weighs the private and public interests to determine whether to dismiss. E.g., Yavuz v. 61 MM, Ltd., 576 F.3d 1166, 1172 (10th Cir. 2009).

### A. Adequate and Available Alternative Forum

Russia is available as an alternative forum. As the district court noted, Lukoil has "consent[ed] to the jurisdiction of the Russian courts and agree[d] not to raise the statute of limitations as a defense to [Archangel's] claims." 75 F. Supp. 3d at 1382. The parties could litigate in Russia, and Archangel has not argued otherwise on appeal.

Archangel argued before the district court that Russia was not an adequate alternative forum because "no investor would provide litigation funding for this case against Lukoil if it were to be litigated in Russia." Id. at 1378. The district court found that this concern applied to the private interests of the parties rather than to the adequacy of the alternative forum. Id. On appeal, Archangel no

8

longer argues that its purported inability to fund the litigation makes Russia an inadequate forum, instead addressing this issue as part of the private interest analysis.

In fact, Archangel does not argue in its brief on appeal that Russia is not an adequate or available alternative forum. It instead argues that forum non conveniens is inapplicable because domestic law—namely, RICO, COCCA, and Colorado state law—apply to the case. This argument has no merit; the presence of a domestic-law claim does not negate the applicability of foreign law. The Second Circuit, addressing RICO specifically under this threshold requirement, has explained:

> "[T]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum," nor on identical remedies. The principle pertains with particular force to civil RICO actions because few foreign jurisdictions provide such an expansive civil vehicle for parties injured by ongoing criminal schemes . . . . Nevertheless, most foreign jurisdictions provide alternative legal actions to address the wrongdoing encompassed by civil RICO.

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 158 (2d Cir. 2005) (quoting PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 74 (2d Cir. 1998); then citing Transunion Corp. v. PepsiCo. Inc., 811 F.2d 127, 129 (2d Cir. 1987)). We agree. Accordingly, we find no abuse of discretion in the district court's conclusion that Russia is an available and adequate alternative forum.

9

*B. Choice of Law*

The district court concluded that the case was governed by a mix of Russian and American law. 75 F. Supp. 3d at 1379. Applying Colorado's choice-of-law rules, the district court found that "the papers show the validity or enforceability of the Agreement between Archangel and AGD will be at issue, and, therefore, Russian law will be at issue. In addition, it appears the transferability of the Diamond License may be at issue, which also raises questions of Russian law." Id.

On appeal, Archangel argues that the presence of state and federal claims, including RICO and COCCA, renders forum non conveniens dismissal impermissible. And while Archangel concedes that the case is not solely governed by domestic law, it argues that the district court erred in its conclusion that Russian law applies to several aspects of the dispute. Instead, Archangel argues that Swedish law governs because of the Stockholm arbitration provision in the original agreement.

Archangel's argument regarding Swedish law is inadequate. Archangel cites only its own previous assertions in support of its contention that Swedish law governs. App. 2673. It appears that the agreement between the parties did not contain a choice-of-law provision, App. 2674, and it is not clear why the parties' choice of forum would be relevant to the choice-of-law analysis. On appeal, Archangel does not cite a single case for this proposition or state which

10

choice-of-law rules should apply. Regardless, we do not agree.

Russian law applies to all aspects of the dispute involving the validity or terms of the parties' agreement. The agreement was negotiated in Russia, it was executed in Russia, and it was to be performed in Russia. Moreover, AGD and Lukoil are Russian companies. Thus, under any of various choice-of-law approaches that might apply,[1] Russian law would govern any contract issues.

Archangel's argument that forum non conveniens dismissal is never permissible when the claim involves domestic law is misplaced. In <u>Rivendell</u>, we stated in dicta that "*forum non conveniens* is not applicable if American law controls." 2 F.3d at 994. Based on this statement, Archangel argues that the district court could not apply forum non conveniens because it included at least some domestic claims in the complaint. But we conclude Archangel's reading of <u>Rivendell</u> is too broad. We did not intend this language in <u>Rivendell</u> to foreclose forum non conveniens dismissal whenever the plaintiff includes a domestic claim. In <u>Rivendell</u>, all of the claims were governed by foreign law. Thus, we had no

---

[1] For example, if we were to follow the "most significant relationship" approach outlined in the Restatement (Second) of Conflict of Laws, as Colorado does, see <u>Kipling v. State Farm Mut. Auto. Ins. Co.</u>, 774 F.3d 1306, 1311 (10th Cir. 2014), we would consider the following factors: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." <u>Id.</u> (quoting Restatement (Second) of Conflict of Laws § 188 (1971)). These factors, aside from Archangel's place of incorporation and place of business, point to Russian law.

11

occasion in <u>Rivendell</u> to consider the availability of forum non conveniens when some of the claims are governed by foreign law and some are governed by U.S. law. But we have elsewhere held that forum non conveniens is available, in favor of a foreign jurisdiction, even when the plaintiff sues under RICO, which of course is a U.S. law. <u>Yavuz</u>, 576 F.3d at 1177; <u>see also Windt v. Qwest Commc'ns Int'l, Inc.</u>, 529 F.3d 183, 193 (3d Cir. 2008) ("Federal courts have refused to afford RICO claims special treatment in *forum non conveniens* inquiries and have found dismissal on this basis proper in cases involving RICO claims."). Thus, we have not applied <u>Rivendell</u> to foreclose consideration of forum non conveniens when some of the claims are based on U.S. law and some are based on foreign law. To do otherwise would allow a party to avoid a forum non conveniens dismissal simply by including a claim based upon a domestic statute. Here, the vast majority of the underlying dispute is subject to Russian law, and forum non conveniens applies.

### C. Public and Private Interest

Where the foregoing threshold requirements are met, as they are here, the court weighs a set of private and public interest factors to determine whether dismissal is appropriate. <u>Yavuz</u>, 576 F.3d at 1172; <u>Gschwind</u>, 161 F.3d at 606. Our review of the district court's analysis of these factors is "quite limited. . . . [W]here the trial court 'has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision

12

deserves substantial deference.'" Yavuz, 576 F.3d at 1172–73 (quoting

Gschwind, 161 F.3d at 606).

*1. Private Interest Factors*

The private interest factors to be considered are:

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious, and inexpensive.

Gschwind, 161 F.3d at 606. When trial in the plaintiff's chosen forum would

cause "'oppressiveness and vexation to a defendant . . . out of all proportion to

plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of

considerations affecting the court's own administrative and legal problems,'" the

court may exercise discretion to dismiss the case. Piper Aircraft, 454 U.S. at 241

(quoting Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)).

The plaintiff here—the Archangel Diamond Corporation Liquidating

Trust—is a Colorado trust with a Colorado trustee. Accordingly, because the

plaintiff is domestic, the district court correctly concluded that there should be "a

strong presumption in favor of hearing this case in Colorado, [Archangel's]

chosen forum." 75 F. Supp. 3d at 1377; cf. Yavuz, 576 F.3d at 1180.

Nevertheless, the court concluded that the case should be dismissed.

The district court found that the private interest factors weighed "slightly in

favor" of Archangel. 75 F. Supp. 3d at 1380. The court discussed the private

13

interest factors at length:

> [I]t appears that most of Lukoil's witnesses are employees or
> management of Lukoil or its subsidiary AGD and most documents
> would be in their possession or control. At least two of Lukoil's
> witnesses are located in the United States. Other foreign witnesses'
> locations are undisclosed and it is unknown whether it would be
> more expensive for them to travel to the U.S. as opposed to Russia.
> There is also insufficient evidence to support a determination of
> whether these foreign witnesses could be compelled to testify in
> Russia, or would voluntarily appear in Russia, but not the U.S.
> Nonetheless, the submissions and [an affidavit] . . . show that
> Lukoil's and AGD's documents are likely to be written in Russian.
>
> On the other hand, Archangel is a Canadian corporation, but its
> claims against Lukoil arise from communications to and from Russia
> and Colorado. Further, . . . Archangel's documents are here in the
> U.S. Nonetheless, such claims also involve extensive prior
> communications between Archangel and AGD to and from Russia
> and Canada. [Archangel's] documents are in English or have been
> translated into English, and litigating this case in Russia would
> require the translation of documents from English to Russian.
> Except for one key witness located in Australia who speaks Russian,
> [Archangel's] other key witnesses are located in New York, Canada,
> the United Kingdom, and Australia. Except for [one witness], none
> of [Archangel's] key witnesses in the West have agreed to testify in
> Russia.

Id. at 1379–80. Based on these circumstances, the district court found as follows:

> [M]oving this lawsuit to Russia would, for the most part, be simply
> be [sic] shifting the burden of litigation from Lukoil to
> [Archangel]. . . . Nonetheless, [Archangel] also contends that
> litigating in Russia would, for all practical purposes, be the "death
> knell" of this case as its litigation funders would be unwilling to fund
> a lawsuit in Russia. While a party's financial resources may be a
> relevant consideration, the Court is less convinced that the possible
> actions of present or future investors are relevant considerations. . . .
> Nonetheless, the Court finds these interests weigh slightly in favor of
> [Archangel].

14

Id. at 1380.  But on appeal, Archangel argues that the private interest factors weigh "strongly" in its favor—essentially that while the district court recognized that the private interest factors favored Archangel, it should have given them more weight.  Archangel's specific contentions on this point are dubious.

For example, Archangel asserts that Lukoil's merits witnesses' testimony could be preserved by deposition or that Lukoil can fly the witnesses to trial at minimal cost, while Archangel's key witnesses live in Colorado but will not fly to Russia.  This argument is illogical.  If the testimony of Lukoil's witnesses can be preserved through deposition, then so can the testimony of Archangel's witnesses.  And there is no support for Archangel's assertion that Lukoil could fly its witnesses from Russia to Colorado at "minimal cost."  We doubt that litigating this case in Russia would increase the total witness costs, although it might increase the financial burden on Archangel.

Archangel claims that its key witnesses will not go to Russia.  The district court found "no competent evidence that any non-party witness [for Lukoil] could not be compelled or would not be willing to attend trial is [sic] the U.S."  75 F. Supp. 3d at 1379.  Perhaps there are more witnesses willing to appear in the United States than witnesses willing to appear in Russia, and perhaps unwilling foreign witnesses could be compelled to testify in the United States.  But we disagree that this factor "strongly favors" Archangel.  Even if more witnesses are willing to come to the United States than go to Russia, this does not change the

15

fact that the majority of the parties' key witnesses are outside the United States. The district court's conclusion was not plainly unreasonable; even if this factor may arguably favor Archangel, we conclude that the district court did not abuse its discretion in finding otherwise.

Archangel claims that no investor would provide funding if the case were litigated in Russia. If this is true, then it is possible that moving the litigation to Russia would be the "death knell" of this case. Archangel argues that the court should have been sensitive to the risk of practically foreclosing the outcome of the suit. We find it hard to believe that Archangel would have trouble finding parties willing to fund a lawsuit potentially worth multiple billions of dollars. But even if we credit this argument, Archangel's concerns are inherently speculative because they refer to the possible future actions of unspecified third-parties. The district court found that "[w]hile a party's financial resources may be a relevant consideration, the Court is less convinced that the possible actions of present or future investors are relevant considerations." 75 F. Supp. 3d at 1380. The court nevertheless acknowledged that moving the litigation to Russia would shift some of the burden of the litigation from Lukoil to Archangel. Id. Given that the court considered these circumstances in its analysis, we are not left with a "firm conviction" that it abused its discretion by finding that the private interest factors only slightly favored Archangel.

16

*2. Public Interest Factors*

Archangel also argues that the public interest factors do not remotely favor dismissal. The district court, however, concluded that the public interest factors weighed heavily in favor of dismissal. Id. at 1380–81. The public interest factors include:

> (1) administrative difficulties of the courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.

Gschwind, 161 F.3d at 606.

The district court found that the case would "pose significant administrative difficulties to the District of Colorado." 75 F. Supp. 3d at 1380. The court was particularly concerned about the difficulty of "obtaining Russian interpreters for trial, applying Russian law to issues relating to the Agreement and Diamond License, and assisting the parties in their efforts to obtain witnesses for deposition or trial." Id. at 1380–81. Archangel argues that this finding was "bizarre," and that the administrative difficulties in this case are no different from those in any other case. It argues that Lukoil can provide interpreters for its witnesses and that discovery in this case would be the same as in any other. This may be so, but the district court is more familiar than we are with its docket and administrative burdens; the district court reasonably found that interpreting and applying Russian

17

law would impose an administrative burden, a conclusion that Archangel does not dispute in its brief.

More importantly, the district court found—addressing the second, third, and fourth factors—that "the dispute has much closer connections and greater interest to Russia" than to the United States. Id. at 1381. The court noted that Archangel's "claims arise from the alleged loss of its investment and interest in a Russian diamond mine and Diamond License, through the conduct of Russian companies located in Russia." Id. Moreover, as discussed above, issues of contract interpretation and the transferability of the diamond license will be governed by Russian law; the district court noted that "[t]hese issues are ones in which Russia has a strong interest in resolving by its courts." Id. The district court's conclusion on these factors was not plainly unreasonable.

Finally, Archangel argues that the district court merely assessed the factors, but did not balance them. Archangel does not explain what it believes to be the difference between "assessing" and "balancing." Regardless, the district court explained its public and private interest analysis in detail, found that the private factors slightly favored Archangel, that the public factors heavily favored Lukoil, and that "Lukoil ha[d] met its heavy burden of showing that dismissal under *forum non conveniens* is appropriate." Id. In concluding that the public interest factors heavily favored Lukoil while the private interest factors slightly favored Archangel, the district court was conducting a balancing test. It is plain from

18

these conclusions that the ultimate logical conclusion to be drawn is that the factors weigh in favor of Lukoil overall. Moreover, in concluding that Lukoil had carried its burden on these factors, the court indicated that the balance weighed in Lukoil's favor. Archangel's assertion that the court failed to conduct a balancing test is baseless.

III

While Archangel raises legitimate practical concerns about its ability to litigate in Russia and the importance of enforcing RICO and COCCA in United States courts, neither of these concerns is dispositive nor convincing. The district court carefully explained its rationale for rejecting Archangel's forum non conveniens arguments, and it applied the analysis reasonably. We therefore conclude that the district court did not abuse its discretion. Because we affirm the district court's dismissal on forum non conveniens grounds, we do not reach the issue of personal jurisdiction. The ruling of the district court dismissing the case on forum non conveniens grounds is affirmed.