Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

STATE OF NORTH CAROLINA

ORANGE COUNTY

HENGQIN DINGSHENG ZHIRONG EQUITY INVESTMENT FUND (LIMITED PARTNERSHIP) and HENGQIN DINGSHENG ZHILIAN EQUITY INVESTMENT FUND (LIMITED PARTNERSHIP),

Plaintiffs,

v.

FENGQIAO LI; XIUZHI LU; MICHAEL VITEK; and CORNERSTONE THERAPEUTICS (SHANGHAI), LTD.,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23 CVS 000586-670

**ORDER AND OPINION ON DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**THIS MATTER** is before the Court on Defendants Fengqiao Li's, Xiuzhi Lu's, Michael Vitek's (the "Individual Defendants") and Cornerstone Therapeutics (Shanghai), Ltd.'s ("Cornerstone" and, collectively, "Defendants") Motion to Dismiss First Amended Complaint ("Motion," ECF No. 35).

**THIS COURT**, having considered the Motion, the parties' briefs and submissions, the arguments of counsel, the applicable law, and all appropriate matters of record, hereby **ORDERS**, in the exercise of its discretion, that this action be **STAYED** pursuant to N.C.G.S. § 1-75.12 until further order of the Court and that Defendants' Motion to Dismiss be **DENIED** as moot.

*Wyrick Robbins Yates & Ponton, LLP by Michael D. DeFrank, Mary Kate Gladstone, and Sophia Blair; and Carter, Ledyard & Milburn, LLP by John Griem and Nathan Harp for Plaintiffs Hengqin Dingsheng Zhirong Equity Investment Fund, LP and Hengqin Dingsheng Zhilian Equity Investment Fund, LP.*

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

*Morningstar Law Group by Christopher J. Jackson and Kenzie M. Rakes for Defendants Fengqiao Li, Xiuzhi Lu, Michael Vitek, and Cornerstone Therapeutics (Shanghai), LTD.*

## INTRODUCTION

1. This case involves a dispute between, on the one hand, plaintiffs who are Chinese investors and minority shareholders of a Chinese pharmaceutical research company and, on the other hand, three of the executives of the company who are alleged to have improperly enriched themselves at the expense of both the plaintiffs and the company. The plaintiffs have previously litigated in the courts of China a prior lawsuit that they brought against one of the current Defendants that involved somewhat related issues. In the present Motion, Defendants seek the dismissal of all of plaintiffs' claims (primarily based on the absence of personal jurisdiction as to Cornerstone) or, alternatively, an order staying all proceedings in this action on the ground that China—not North Carolina—is the appropriate forum for this dispute. For the reasons set out below, the Court concludes that a stay of this case is appropriate pursuant to the doctrine of forum non conveniens.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

2. Plaintiffs Hengqin Dingsheng Zhirong Equity Investment Fund (Limited Partnership) and Hengqin Dingsheng Zhilian Equity Investment Fund (Limited Partnership) are investment firms based in Guangdong Province, China. (Am. Compl. ¶¶ 2–3, ECF No. 26.)

---

[1] In this section, the Court draws from the allegations in the Amended Complaint along with the affidavits and exhibits submitted by the parties in support of and in opposition to the Motion.

3. Cornerstone is a medical research company that was founded in 2015. Cornerstone is incorporated in China, and during the time that the company was active, its corporate offices were in Shanghai, China. (Li Aff. ¶¶ 4, 8, ECF No. 36.)

4. Plaintiffs were early investors and shareholders in Cornerstone. (Am. Compl. ¶ 1.)

5. Defendant Fengqiao Li ("Li"), the President and Chairman of the Board of Directors of Cornerstone, is a United States citizen and resident of Orange County, North Carolina. (Li Aff. ¶¶ 1–2.) Additionally, Li is the Legal Representative of Cornerstone, which means that under Chinese law, he is accountable to the company and possesses legal authority to act on the company's behalf. (Am. Compl. ¶¶ 26–27.)

6. Defendant Xiuzhi Lu ("Lu," the spouse of Li) is a United States citizen and resident of Orange County, North Carolina. She is the Supervisor[2] of both Cornerstone and Yantai Kangshi Medical Technology Co., Ltd. ("Yantai Kangshi"), a wholly owned subsidiary of Cornerstone. (Am. Compl. ¶¶ 5, 30.)

7. Defendant Michael Vitek, a shareholder and Director of Cornerstone, is a United States citizen and resident of Orange County, North Carolina. (Am. Compl. ¶ 6.)

8. The original shareholders of Cornerstone were Li, Vitek and a company called Cognosci Inc. ("Cognosci").[3] (Vitek Aff., Ex. 1, at 15, ECF No. 72.)

---

[2] Under Chinese law, a corporate "Supervisor" is an individual who—although not a director or officer—is tasked with supervising the company's operations. (Am. Compl. ¶ 31.)

[3] Cognosci's ownership interest was sold to Shanghai Kangrose Enterprise Management Partnership LTD ("Kangrose") in 2017. Kangrose was a corporate vehicle created to provide

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

9. In 2016, Plaintiffs collectively made an investment of approximately $4.3 million in Cornerstone and received roughly 30% of the company's stock. (Am. Compl. ¶ 19.)

10. Cornerstone also received "support and significant financial investments from the local [Chinese] government[.]" (Am. Compl. ¶ 23.)

11. The current ownership interests of Cornerstone are as follows: Li 46%, Plaintiffs (collectively) 30%, Kangrose 15%, and Vitek 9%. (Li Aff. ¶ 7.)

12. Between 2017 and 2020, Yantai Kangshi conducted most of Cornerstone's medical research in Yantai, China. (Li Aff. ¶ 15.)[4]

13. This research was conducted with the goal of creating therapeutic treatments for neurological disorders and injuries. As a result of this research, Cornerstone developed a series of neuroprotective agents that demonstrated the potential to treat ischemic strokes. (Li Aff. ¶ 14.)

14. In 2019, Cornerstone entered into a contract with Cognosci—a North Carolina biomedical research company founded by Vitek—pursuant to which Cognosci performed tests that confirmed a key theoretical component of Cornerstone's neurological research. (Li Aff. ¶¶ 16, 18.)

15. Li executed the contract in China on behalf of Cornerstone, and Vitek signed the contract on behalf of Cognosci from North Carolina. All work performed

stock options to Cornerstone employees. (Li Aff. ¶ 6.) Li is the 99% owner of Kangrose. (Am. Compl. ¶ 22.)

[4] Cornerstone also used other third parties to conduct research in China. (Li Aff. ¶ 15.)

by Cognosci pursuant to the contract took place at Cognosci's laboratories in Durham, North Carolina, and was completed by 2019. (Li Aff. ¶¶ 17–18.)

16. In his capacity as Chairman of the Board, Li had an employment contract with Cornerstone that entitled him to receive a monthly salary. (Am. Compl. ¶ 28.)

17. From October 2016 to January 2020, Li managed Cornerstone's work from the company's China offices. (Li Aff. ¶ 9.)

18. Li traveled to North Carolina from China in January 2020 and was ultimately unable to return to China because of COVID-19 travel restrictions. (Li Aff. ¶ 11.)

19. From January 2020 to August 2020, Cornerstone's daily operations were managed in China by Huan Wang, Cornerstone's Director of Research and Development. (Li Aff. ¶¶ 10, 12.)

20. The pandemic had a profound impact on Cornerstone's operations. In the early months of 2020, employees were unable to work from the company's Shanghai offices. Moreover, Cornerstone was unsuccessful in raising money to fund its continued operations. In addition, Yangtai Kangshi was forced to terminate eight of its nine employees in August 2020 and to cease its research operations. (Li Aff. ¶¶ 15, 20–21.)

21. On 1 March 2020, Wang Xiaoyin, a Director of Cornerstone, sent a letter to Lu demanding that she (in her capacity as Supervisor for Cornerstone) file a lawsuit against Li for actions that Xiaoyin deemed to be "harmful to the interests of

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

Cornerstone Shanghai." Lu, however, did not take the requested action. (Am. Comp. ¶ 49.)

22. On 26 June 2020, Li and Vitek—through a North Carolina-based intellectual property law firm, NK Patent Law—filed a provisional patent application, No. 63/044,493 (1185/2 UTIL) "Cyclic Peptide Compounds and Methods of Use." (Am. Compl. ¶ 50.) The inventors listed on the provisional patent application were Li, Vitek, and Yuchen Chen. (Vitek Dep., Ex. 1, at 34, ECF No. 72.1.) Additionally, on 25 June 2021, Li and Vitek filed an application under the Patent Cooperation Treaty ("PCT"), which claimed priority to the provisional application, International Application No. PCT/US2021/039021. Following the PCT application, Li and Vitek also filed a European patent application. (Am. Compl. ¶ 50.)[5]

23. Representatives of Plaintiffs (who were acting without authorization from Cornerstone's Board of Directors), went to Cornerstone's Shanghai office on 21 and 22 July 2020 and seized Cornerstone's legal seals, bank keys, certification of operation, and other corporate documents. They also took possession of company documents belonging to Yantai Kangshi. (Li Aff. ¶ 22.)

24. In August 2020, Wentao He ("He") began working for Cornerstone as the Chairman's Assistant and Director of Operations. (Li Aff. ¶ 10.) In this capacity, he collected the company's mail and provided updates to Li. Through He's efforts Cornerstone was able to regain possession of the items that Plaintiffs' representatives

---

[5] Following a series of assignments Li and Vitek each held a 50% interest in the rights under the provisional application. (*See* Ex. 14–15, ECF Nos. 72.14–72.15.)

had seized.  He has served as the custodian of these documents since that time.  (Li Aff. ¶ 24.)

25.     In August 2020, Peilin Zhang, the General Manager of Yantai Kangshi, regained possession of Yantai Kangshi's company documents from the representatives of Plaintiffs who had taken them.  Zhang currently maintains control of these documents in China.  (Li Aff. ¶ 25.)

26.     All parties to this action agree that as a result of the cessation of Cornerstone's research operations, Cornerstone is not currently carrying out its former business operations.  However, the company's Board has never approved a resolution to wind up the company's affairs. (Li Aff. ¶ 27.)

27.     In March 2022, Cornerstone's website, www.cornerstonesci.com, which was published only in Chinese, was shut down due to non-payment of service fees. (Li Aff. ¶ 30.)

28.     Cornerstone's only bank account is in China, and as of November 2024 the account balance was less than $400.  (Cornerstone Dep. Ex. 7, at 21, ECF No. 72.7.)

29.     Cornerstone's email service was shut down in 2022 when it failed to pay associated fees.  (Li Dep., Ex. 2, at 138, ECF No. 72.2.)

30.     Zhang remains the General Manager of Yantai Kangshi but has not received compensation since May 2022.  (Li Aff. ¶ 21.)  Similarly, He continues to accept mail on behalf of Cornerstone and maintains the company's corporate

documents, although he has not received compensation since May 2022.  (Li Aff. ¶ 22.)

31.    Although Cornerstone is unable to pay rent and no longer has a physical office, it still maintains a Shanghai address.  Cornerstone has never had an office in the United States.  (Li Aff. ¶ 8.)

32.    Cornerstone has held two virtual Board meetings since it ceased its business activities.  First, on 23 August 2021, Cornerstone held a board meeting via Zoom that Vitek and Li attended from Durham, North Carolina.  Two other individuals, Bing Xie and Xiaosheng Deng (both attorneys from the Kangscheng Law Firm in Shanghai), attended the meeting from China.  (Li's Resp Interrog, Ex. H, at 3, ECF No. 74.9.)

33.    Cornerstone held another Board meeting on 17 November 2022 via Zoom. Vitek, Li, and Lu attended from Durham, North Carolina, and Yang Xu attended a portion of the meeting from China. (Li's Resp. Interrog, p. 3–4.)

34.    Plaintiffs initiated their first lawsuit against Li (the "China Litigation") in a Shanghai court on 3 November 2020.  In the China Litigation, Plaintiffs alleged that Li had paid himself a salary from Cornerstone that was excessive, had caused Cornerstone to violate environmental regulations regarding the disposal of hazardous waste, and had engaged in a "fictitious transaction" with Cognosci.  (Li Aff. ¶ 26.)

35.    On 16 August 2021, the People's Court of Pudong New District China (the "People's Court") issued a judgment in the China Litigation, agreeing that Li

had, in fact, overpaid himself but rejecting Plaintiffs' other claims. (Li Aff., Ex. 2, ECF No. 36.2.)

36. In its order, the People's Court cited to the documents in the record that it considered in reaching its decision:

> The above facts are supported by the "Labor Contract", "Administrative Penalty Decisions", "Research and Development Service Agreement", "Notification Letter", WeChat chat records, emails, enterprise credit information publicity records and salary tables provided by plaintiffs, the "Board Resolution", "Labor Contract", "Research and Development Service Agreement", "Activity Report", the company articles of association and amendments provided by the defendant, as well as the statements of the parties and other evidence, and they are confirmed by this Court after cross-examination.

(Li Aff. Ex. 2, at 15, ECF No. 36.2.)

37. On 26 August 2022, the Shanghai First Intermediate People's Court (an intermediate appellate court in China) reversed the trial court's finding that Li had received an excessive salary and affirmed the People's Court's rulings on the other claims. (Li Aff. Ex. 4, ¶ 31, ECF No. 36.4.) That appellate ruling was subsequently affirmed by the Shanghai High People's Court of the People's Republic of China on 24 April 2023. (Li Aff. Ex.6, ECF No. 36.6.)[6]

38. Plaintiffs filed their Complaint in the present action in Orange County Superior Court on 5 May 2023. (ECF No. 3.) The matter was designated as a mandatory complex business case and assigned to the undersigned on 26 May 2023. (ECF Nos. 1–2.)

---

[6] Original and translated copies of the judgments from the China Litigation are attached to Li's Affidavit at ECF Nos. 36.2–36.6.

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

39. On 15 August 2023, Plaintiffs filed an Amended Complaint. (Am. Compl., ECF No. 26.) The Amended Complaint contains four causes of action (each arising under Chinese law): (1) breach of duties under Articles 147–149 of the Company Law of the People's Republic of China against the Individual Defendants; (2) theft of company property against Li; (3) theft of intellectual property against the Individual Defendants; and (4) oppression of minority shareholders against Li and Vitek. (Am. Compl. ¶¶ 80–102.)

40. The first three of these claims were asserted derivatively on behalf of Cornerstone, which is named as a nominal Defendant. The fourth claim was brought as a direct claim by Plaintiffs against the Individual Defendants.

41. Specifically, Plaintiffs contend that Li breached his duties of loyalty and diligence to Cornerstone by misappropriating Cornerstone's corporate funds; competing against (and assisting others in competing against) Cornerstone; and stealing corporate property belonging to Cornerstone, including intellectual property. Plaintiffs assert that Li's breaches are unlawful under Articles 147, 148, and 149 of the Company Law of the People's Republic of China. (Am. Compl. ¶ 81.)

42. Plaintiffs further contend that Li violated Articles 147 and 152 of the Company Law of the People's Republic of China and Article 271 of the Criminal Law of the People's Republic of China, when he broke into Cornerstone's safe in its Shanghai offices and transported key company property to the United States. (Am. Compl. ¶¶ 88, 90–91.)

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

43.     Plaintiffs assert that Lu and Vitek also breached their respective duties of loyalty and diligence when they each failed to bring suit against Li for his alleged unlawful actions against Cornerstone.  Based on this theory, Plaintiffs allege that Lu and Vitek have both violated Articles 147, 148, and 149 of the Company Law of the People's Republic of China.  (Am. Compl. ¶¶ 82–83.)   Plaintiffs also assert that Li and Vitek violated Article 20 of the Company Law of the People's Republic of China by abusing their positions as majority shareholders of Cornerstone.  (Am. Compl. ¶¶ 99–100.)

44.     Finally, Plaintiffs assert that all of the Individual Defendants have violated Article 147 of the Company Law of the People's Republic of China and Articles 219 and 271 of the Criminal Law of the People's Republic of China because they have each maintained unlawful possession of corporate property belonging to Cornerstone.  (Am. Compl. ¶¶ 94–95.)

45.     Defendants filed the present Motion on 12 November 2023.  In the Motion, Defendants seek the dismissal of all claims in this action pursuant to Rules 12(b)(2) and (6) of the North Carolina Rules of Civil Procedure.  The primary basis for their arguments seeking dismissal is this Court's alleged lack of personal jurisdiction over Cornerstone.

46.     In the alternative, Defendants ask that this action be stayed pursuant to the doctrine of forum non conveniens based on their contention that the courts of China are the appropriate forum for this action.

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

47. Following the parties' initial briefing, the Court held a hearing on the Motion on 1 July 2024.

48. Based on its determination that the record before it was incomplete in certain material respects, the Court entered an Order (the "Jurisdictional Discovery Order," ECF No. 55) on 3 July 2024 that directed the parties to conduct limited discovery relating to the personal jurisdiction and forum non conveniens issues. The Jurisdictional Discovery Order contained a deadline of 30 August 2024 for the completion of this discovery and set forth a supplemental briefing schedule.[7]

49. The Court held a supplemental hearing on the Motion on 3 February 2025 at which all parties were represented by counsel.

50. The Motion is now ripe for resolution.

**ANALYSIS**

51. Defendants argue that dismissal of Plaintiffs' Amended Complaint is proper for two reasons. First, Defendants contend that Cornerstone is a necessary party in this case (at least as to three of the four claims Plaintiffs have asserted) and that this Court lacks personal jurisdiction over Cornerstone. Second, Defendants assert that Plaintiffs' claims are barred either in whole or in part by the statute of limitations. In the alternative, Defendants argue that this action should be stayed based on the doctrine of forum non conveniens.

---

[7] The parties subsequently sought—and the Court granted—several extensions of the deadline for the completion of discovery along with a revised briefing schedule. (ECF Nos. 58, 61, 64, and 67.)

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

52.     The Court has thoroughly considered the parties' arguments in this case and has exhaustively reviewed their briefs and other submissions.  Based on its ultimate determination that this action should be stayed on forum non conveniens grounds, this Court need not—and does not—reach either Defendants' personal jurisdiction or statute of limitations arguments.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("[A] court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.").

53.     North Carolina's General Assembly has codified the doctrine of forum non conveniens as follows:

> If, in any action pending in any court of this State, the judge shall find that it would work substantial injustice for the action to be tried in a court of this State, the judge on the motion of any party may enter an order to stay further proceedings in the action in this State.  A moving party under this subsection must stipulate his consent to suit in another jurisdiction found by the judge to provide a convenient, reasonable and fair place of trial.

N.C.G.S. § 1-75.12(a).

54.     At the 1 July 2024 hearing, counsel for Defendants stipulated that all Defendants consent to suit in the courts of China if this Court elects to transfer the case.

55.     Our Court of Appeals has articulated a number of factors for courts to consider when addressing a forum non conveniens issue.  Those factors include

> (1) the nature of the case, (2) the convenience of the witnesses, (3) the availability of compulsory process to produce witnesses, (4) the relative

> ease of access to sources of proof, (5) the applicable law, (6) the burden of litigating matters not of local concern, (7) the desirability of litigating matters of local concern in local courts, (8) convenience and access to another forum, (9) choice of forum by plaintiff, and (10) all other practical considerations.

*Lawyers Mut. Liab. Ins., Co., of N.C. v. Nexsen Pruet Jacobs & Pollard,* 112 N.C. App. 353, 356 (1993).

56. It is not required that a court consider all of these factors in every case as the unique circumstances of a particular case may make some factors more relevant than others. Moreover, in cases where a court has decided to grant a stay under N.C.G.S. § 1-75.12, it is not necessary for the court to find that every one of the relevant factors weighs in favor of a stay. *See Muter v. Muter*, 203 N.C. App. 129, 132–33 (2010); *Wachovia Bank*, 2006 NCBC LEXIS 10, at *12. Instead, the court must determine that "(1) a substantial injustice would result in the absence of a stay, (2) the stay is warranted by the factors that are relevant and material, and (3) the alternative forum is convenient, reasonable, and fair." *Cardiorentis Ag. v. IQVIA Ltd.*, 2018 NCBC LEXIS 243, at *7–8 (N.C. Super. Ct. Dec. 31, 2018).

57. The Court must now address those factors that it deems to be most relevant based on the particular facts of this case.

## A. Nature of the Case, Applicable Law, and Respective Interests of China and North Carolina

58. It is undisputed that all of the claims asserted by Plaintiffs in this action are governed by Chinese law.[8]

---

[8] The Court also observes that the parties' Investment Agreement, which was drafted in Chinese, provides that "the conclusion, validity, interpretation and performance of this

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

59.     Although it is axiomatic that foreign courts are better equipped to apply their laws, North Carolina courts can—and occasionally do—apply the law of foreign countries. *See Cardiorentis.* 2018 NCBC LEXIS 243, at *21.

60.     It would be unrealistic, however, to minimize the burdens that would exist upon the application of Chinese law in a case being litigated in a North Carolina court. Among other things, it is highly likely that one or more experts on Chinese law would be required to assist the Court with the application of that country's law not only at trial but also in connection with rulings on dispositive motions. In addition, given that Plaintiffs have demanded a jury trial on all claims in this action, the Court would almost certainly need to utilize the assistance of such experts in crafting jury instructions.

61.     Thus, the applicability of Chinese law to this case supports the issuance of a stay under N.C.G.S. § 1-75.12. *See Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1181 (10th Cir. 2009) (noting in forum non conveniens analysis that the difficulties posed by the need to translate foreign law and determine its application to the parties' dispute highlighted the administrative burden on the court).

62.     In addition, it is very likely that Chinese language translators would also be necessary at trial. Chinese is the first language of Defendants Li and Lu.[9]

---

Agreement shall be governed by and constrained by Chinese laws. If any dispute arises during the interpretation and performance of this Agreement, the parties shall first negotiate to resolve it. If negotiation fails, the dispute shall be submitted to the China International Economic and Trade Arbitration Commission in Beijing for arbitration. The arbitration award is final and binding on all parties." (Exhibit J, at 9, Art. 15, ECF No. 76.3.)

[9] The Court notes that in his recent deposition Li required the assistance of an interpreter in responding to certain questions. *(See generally* ECF Nos. 72.2, 72.7, 74.2, 74.6,)

Moreover, based on the parties' projections of the likely witnesses in this case, it appears that a significant number of them would also require a Chinese translator. Similarly, all of the corporate documents relating to Cornerstone are written in Chinese, and the same appears to be true for all other corporate documents located in China.

63.     Therefore, the anticipated need for (and resulting expense associated with) one or more Chinese translators likewise counsels in favor of a stay.

64.     This Court must also consider the nature of the case and assess the respective interests of North Carolina and China in the subject matter of this lawsuit.

65.     As discussed above, this case involves a dispute between Chinese minority investors (Plaintiffs) of a Chinese company (Cornerstone) regarding actions mostly (albeit not entirely) taken in China by the directors and officers of the corporation (Li, Lu, and Vitek).  The causes of action asserted by Plaintiffs are premised upon a violation of the Company Law of the People's Republic of China.  In addition, as noted above, Plaintiffs allege in this lawsuit that the Individual Defendants have also violated China's *criminal* laws.

66.     To be sure, Plaintiffs also assert that the Individual Defendants (who currently live in North Carolina) committed wrongful acts in this State—primarily by filing patent applications in their own name regarding the intellectual property of Cornerstone.  These allegations provide North Carolina with a certain degree of interest in this action.

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

67.     Nevertheless, the Court finds that China possesses a far greater interest in this litigation than North Carolina. Once again, the essence of Plaintiffs' allegations is that the Individual Defendants stole the property of a company formed in China, which was the site of all of its corporate acts related to its business purpose. China has a significant interest in resolving disputes relating to the affairs of its companies and an undeniably strong interest in enforcing its civil and criminal laws.

68.     Thus, the nature of the case, the governing law, and the competing interests of the two forums strongly favor a stay. *See, e.g.*, *Manuel v. Gembala*, 2012 N.C. App. LEXIS 359, at *12 (N.C. Ct. App. Mar. 20, 2012); *LaMack v. Obeid*, 2015 NCBC LEXIS 24, at **21 (N.C. Super. Ct. Mar. 5, 2015).

**B. Location of Witnesses and Evidence**

69.     With regard to the question of whether China or North Carolina is the location of most of the potential witnesses in this case and the bulk of the relevant evidence, the parties reach different conclusions in their respective arguments. Based on its review of the record, however, the Court finds that this factor is largely in equipoise.

70.     Plaintiffs point out that the Individual Defendants are all currently located in North Carolina.  But they do not dispute the fact that because the Individual Defendants have obvious personal interests in the outcome of this case, compelling their attendance at trial is not likely to pose a hurdle for Plaintiffs. Admittedly, to the extent that the patent attorneys (or any other individuals with knowledge of the patent applications filed in this State by the Individual Defendants)

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

are likely witnesses, they cannot be compelled to travel to China for the purpose of giving testimony.

71. But that is counterbalanced by the fact that the third parties with knowledge of the events referenced in the Complaint regarding Cornerstone and the battle for control of its corporate documents all appear to live in China (and therefore could not be compelled to testify in North Carolina). Moreover, each of the persons who make up the entities serving as Plaintiffs in this action live in China.

72. The location of relevant evidence also appears to be split between China and North Carolina. On the one hand, certain documents relating to the patent applications are located in this State, while the corporate documents and other tangible evidence of Cornerstone (such as bank records, legal seals, keys, certifications of operation, and other corporate documents) appear to be in the possession of Cornerstone's former employees, who are located in China.

73. Accordingly, this factor does not serve as a basis for either granting or denying a stay.[10]

## C. Adequacy of Forum

74. Plaintiffs' arguments as to why China's courts do not qualify as an adequate alternative forum primarily focus on the fact that China utilizes an inquisitorial system (rather than the adversarial system used in the United States)

---

[10] The Court notes, however, that even with regard to the documents located in North Carolina, Plaintiffs were given the opportunity to conduct limited discovery following the initial hearing on this Motion. As a result, they had the opportunity to request, and obtain copies of, at least some of the documents that are located in North Carolina. As a result, they will have the opportunity to submit those documents at trial before a judge in China.

and the diminished power that litigants have to conduct discovery and introduce evidence in such systems.[11] The Court finds these arguments to be unpersuasive.

75. Plaintiffs have submitted the affidavit of an attorney, Rachel Li, who testified on several topics relating to how civil litigation is conducted in China. Attorney Li, citing to various provisions of the Civil Procedure Law of the People's Republic of China, testified in pertinent part as follows:

> In contrast to the adversarial system of litigation in the U.S., where the litigation process is entirely driven by the parties, Chinese litigation follows an inquisitorial system led by the judge.
>
> In Chinese civil litigation, the judge has the authority to investigate and collect evidence from any relevant entities and individuals. The litigants and their lawyers, however, are not endowed with such legal rights. The Chinese civil procedure laws do not provide a system akin to the discovery and disclosure procedures under U.S. law, and the parties cannot freely investigate and collect evidence from the other party or non-parties, nor can they directly compel non-parties to cooperate in testifying in court.
>
> According to Chinese civil procedure law, parties can only apply to the court for investigations and evidence collections from other non-parties, and for requesting witnesses to testify in court. Whether such applications will be granted is at the sole discretion of the judge depending on the relevance and necessity of the application.
>
> Chinese law does not have a system of discovery similar to that in U.S. law, and the parties are not endowed with such legal rights to serve any discovery requests, such as depositions, interrogatories, or requests for documents, as in U.S. litigation. Parties bear the burden of proof for the claims or defenses they assert. However, a party cannot compel the other party or a non-party to provide evidence or testify.
>
> Instead, a party may submit a written application to request the court to conduct investigation and collect evidence that the party is unable to

---

[11] An inquisitorial system is defined as a "system of proof-taking used in civil law, whereby the judge conducts the trial, determines what questions to ask, and defines the scope and extent of the inquiry." *Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56, 68 (1st Cir. 2019) (citation omitted).

collect on their own for reasons beyond their control or to notify other entities or individuals to testify in court. The decision to grant such applications rests entirely with the judge. In practice, the judge usually considers factors such as whether the evidence is something the party genuinely cannot obtain due to objective reasons, whether the witness has any interest conflict with the parties or their attorneys, and the relevance of the evidence or testimony to the fact in dispute when deciding whether to approve the application.

Once the judge grants the party's request to obtain certain evidence, the judge (or sometimes the party's attorneys, with the court investigation order issued by the judge) has the authority to investigate and collect the evidence from relevant entities or individuals, who cannot refuse to cooperate. Once the judge grants the party's request to require relevant witnesses to testify, the witnesses are obligated to cooperate with the court's order to testify.

(Aff. Rachel Li, at 2–3, ¶¶ 4–7, ECF No. 73 (citations omitted).

76. Plaintiffs argue that these characteristics of China's inquisitorial system render China's courts an inadequate alternative forum for this litigation. The Court disagrees.

77. China's inquisitorial system is hardly an anomaly. Indeed, most court systems founded in civil law are inquisitorial, including those in France, Belgium, Germany, Japan, and parts of Africa not formerly under British rule. *See* Geoffrey C. Hazard, Jr., *Discovery and the Role of the Judge in Civil Law Jurisdictions*, 73 Notre Dame L. Rev. 1017, 1019–22 (1998).

78. Plaintiffs' concerns about the adequacy of China's judicial system primarily relate to limitations on the ability of litigants to engage in discovery. The Seventh Circuit has explained, however, that such arguments "reflect[] a misunderstanding of the difference between a common law system, such as the

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

United States, and a civil law system" (such as exists in China).[12] *U.S.O. Corp. v.*

*Mizuho Holding Co.*, 547 F. 3d 749, 753 (7th Cir. 2008).

> [In a common law system] the burden of investigation falls on the parties' lawyers, and discovery procedures are designed to facilitate party investigation. In the [civil law system], the burden of investigation falls on the judges, and the role of the lawyers is correspondingly diminished.

*Id.* at 753-54.

79.     The Seventh Circuit concluded that in terms of discovery, the two systems are "six of one, half-dozen of the other; for the investigatory powers of judges in a civil law system are great."  *Id.* at 754.

> Although American critics frequently point to the absence of discovery in [civil law jurisdictions], the point is a red herring. For its absence follows straightforwardly from the use of discontinuous trials. In the United States, the need to try facts before a specially impaneled jury forces lawyers to concentrate preparation into a discrete pretrial phase. Discovery is merely its name. In [civil law jurisdictions] the trial itself blends the American trial equivalent with the American discovery equivalent. Granted even between court hearings . . . . lawyers cannot conduct the indiscriminate and largely unsupervised fishing expeditions that characterize some American discovery. Instead to obtain evidence they generally must convince the judge to order others to testify or to produce documents[.]  [J]udges do have the power they need to make the disclosure process work. If a judge finds a request for information valid, he can order the opposing party to comply.  Should the party refuse, depending on the issue he can fine him, throw him in jail, or find the disputed fact in the other party's favor. Should a third party refuse to

---

[12] The terms "inquisitorial system" and "civil law system" are synonymous.  *See Socieite Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 560 (1987) ("The civil-law system is inquisitional rather than adversarial and the judge normally questions the witness and prepares a written summary of the evidence."); *see also In re Microsoft Corp.*, 2006 U.S. Dist. LEXIS 24870, *8–9 (N.D. Cal. 2006) ("The European Commission is part of a civil law system which differs in material ways from the U.S. judicial system.  While our system of justice relies on an adversarial process, civil law systems rely on an "inquisitorial" process in which the judicial officer plays a more active role in gathering evidence.").

> comply with an order to testify or produce documents, he can again fine him or throw him in jail.

*Id.* at 755 (citations omitted).

80. An alternative forum is inadequate where it "does not permit litigation of the subject matter of the dispute." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). The mere fact that another country's judicial system utilizes the inquisitorial method is insufficient, standing alone, to establish the inadequacy of their courts as an alternative forum. *See, e.g.*, *Cliffs-Neddrill Turnkey Int'l v. M/T Rich Duke*, 734 F.Supp. 142, 147 (D. Del. 1990) ("This Court is not prepared to hold that the inquisitorial system of adjudication, in and of itself, constitutes an inadequate forum[.]").

81. To be sure, China's courts operate differently than those in the United States. But showing that a forum is different is not sufficient—without more—to show that it is inadequate. Indeed, numerous courts in this country have held that China was an adequate alternative forum for litigation. *Sinochem Int'l,* 549 U.S. at 435–36 ([T]he gravamen of Malaysia International's complaint is an issue best left for determination by the Chinese courts."); *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 251 (4th Cir. 2011) (finding China an adequate forum for litigation of tort claims); *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 205 (4th Cir. 2009) ("[T]he Chinese forum provides a remedy, and moreover one that is completely analogous to the remedy provided by a U.S. forum i.e. affording the trial of claims against a limitation fund—albeit computing the limitation fund through a different, but not necessarily less adequate method."); *Fang Cong v. Xue*

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

*Zhao*, 2025 U.S. Dist. LEXIS 25634 at *6 (W.D. Wash. Feb. 12, 2025) (holding that China offers an adequate forum for litigation of copyright dispute); *Innocoll Pharms., Ltd. v. AstraZeneca PLC,* 2024 U.S. Dist. LEXIS 189634 *11 (E.D. Penn. Oct. 18, 2024) (finding China to be an adequate forum to litigate tort claims); *Lu v. Sap. Am*., 2022 US Dist. LEXIS 38265 at *20 (E.D. Mich. Mar. 3, 2022) (holding that China was an adequate forum even where Chinese law was less favorable to plaintiff's likelihood of recovery); *Tongfang Global v. Element Tv Co*., 2020 U.S. Dist. LEXIS 138595 at *12 (C.D. Cal. June 2, 2020) (concluding that China was an adequate forum where Chinese law governed the dispute and plaintiff and relevant third parties resided in China); *Jiangsu Hongyuan Pharm. Co., Ltd. v. DI Global Logistics, Inc.*, 159 F. Supp. 3d 1316, 1332 (S.D. Fla. 2016) (finding China an adequate forum for resolution of breach of contract action).

82.     For these reasons, the Court is satisfied that a Chinese court hearing this matter can provide Plaintiffs with a fair opportunity to litigate their claims and to seek recovery as afforded under Chinese law.

### D. Plaintiffs' Choice of Forum

83.     Finally, Plaintiffs argue that deference should be afforded to their decision to file suit in North Carolina.

84.     It is true as a general proposition that North Carolina courts give deference to a plaintiff's choice of forum.  *See Wordsworth v. Warren*, 2018 NCBC LEXIS 1087, at *10 (N.C. Super. Ct. Oct. 15, 2018); *Wachovia Bank*, 2006 NCBC LEXIS 10, at *18.  However, such deference is diminished when a plaintiff brings suit

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

outside its home forum. *See Piper Aircraft*, 454 U.S. at 255–56 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable.").

85.     Here, Plaintiffs are Chinese entities who nevertheless chose to bring this case in North Carolina rather than in the courts of China. Accordingly, their choice of forum is entitled to considerably less deference than if they had filed suit in their home forum. *See U.S.O. Corp.*, 547 F.3d at 752 ("A foreign company that chooses to sue in the United States rather than in its own country is unlikely to experience inconvenience if the court invokes forum non conveniens against it.").

86.     Moreover, the Court cannot ignore the fact that Plaintiffs affirmatively chose to bring their prior lawsuit—the China Litigation against Li in 2020—in a Chinese court. At the 3 February hearing, Plaintiffs' counsel conceded that because Li was already living in Orange County when the suit was brought, Plaintiffs could have initiated that lawsuit in North Carolina. The fact that they consciously chose not to do so diminishes their present argument that the courts of China constitute an inadequate forum.

. . .

87.     After considering all of the relevant factors, the Court concludes that this case should be stayed pursuant to N.C.G.S. § 1-75.12. In short, this lawsuit was brought by plaintiffs based in China, centers around a Chinese company, and is governed by Chinese law. Moreover, it is based—in key respects—on events that took place in China and will likely involve the testimony of third-party witnesses living in

Hengqin Dingsheng Zhirong Equity Inv. Fund (Ltd. P'ship) v. Li, 2025 NCBC 9.

China and the introduction into evidence of documents written in Chinese. In addition, Plaintiffs chose to file a prior lawsuit against one of the current Defendants involving the same company in the courts of China.

88.     Defendants have shown that a substantial injustice would result if this case were permitted to proceed in this Court. The Court further finds that China is a convenient, adequate, and available forum for the resolution of this dispute.

## CONCLUSION

**THEREFORE, IT IS ORDERED**, in the exercise of the Court's discretion, that this action is hereby **STAYED** pursuant to N.C.G.S. § 1–75.12. During the pendency of the stay, the Court will place this case on inactive status.

The Court **DENIES as moot** Defendants' Motion to Dismiss under Rules 12(b)(2) and (6).

The Court **FURTHER ORDERS** that the parties shall jointly file a status report within six months of the entry of this Opinion. In the event that the parties resolve this dispute by settlement or other means, they shall notify the Court within seven days of resolution.

**SO ORDERED**, this the 5th day of March 2025.


/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge
for Complex Business Cases